COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


DONALD GLENN BERNARD

                                      MEMORANDUM OPINION[*] BY
v.    Record No. 1608-98-3           JUDGE JAMES W. BENTON, JR.
                                          NOVEMBER 2, 1999
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                     Charles J. Strauss, Judge

           Charles C. Cosby, Jr. (Henry G. Crider, on
           brief), for appellant.

           Leah A. Darron, Assistant Attorney General
           (Mark L. Earley, Attorney General, on brief),
           for appellee.


     The trial judge convicted Donald Glenn Bernard of aggravated

sexual battery.  Bernard contends that, following the conviction,

he met his burden of proving after-discovered evidence and that

the trial judge erred in denying his motion to set aside the

verdict.  We affirm the judgment.

                              I.

     Wendy Earles testified that in 1996 she had a romantic

relationship with Donald Glenn Bernard.  On June 1 of that year,

Bernard and his son, who was eleven years of age, spent the night

in Earles' residence, a two bedroom trailer.  Also present were

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Earles, her eleven-year-old daughter, her ten-year-old son, and another eight-year-old child.  Earles testified that her daughter reported to her the following morning that Bernard touched her during the night.

Earles' daughter testified that she, her brother, and Bernard's son fell asleep in the living room.  She slept on the floor; her brother slept on a sofa; and Bernard's son slept on a chair.  She testified that during the night she was awakened by her mother's bedroom door, which squeaked when opened.  She then heard the sound of footsteps in the kitchen, in the living room passing by her, and then in the bathroom.  After she heard the toilet flush, she saw Bernard, illuminated by a nightlight, coming from the bathroom.  Seeing that he was naked, she put her head under the cover.

Earles' daughter testified that after she put her head under the cover, she felt large, rough, cold hands under her clothing and touching her vagina.  She testified that she "moved and acted like [she] was having a dream or . . . felt something and then they stopped."  She then heard footsteps going toward her mother's bedroom and heard the door close.  She noticed that her brother was still asleep on the sofa and that Bernard's son was still on the chair.  She then went to sleep.  In the morning, she reported to her mother that Bernard had touched her vagina during the night.

-

On cross-examination, she could not recall testifying at the preliminary hearing that she did not hear anything before being touched. She did recall earlier testifying that she only saw the back of the person who entered the room. She also recalled her earlier testimony that she was touched five or six seconds after she heard footsteps.

Earles' son testified that on the night of June 1, he slept on the sofa in the living room and Bernard's son slept on a chair in the same room. He thought his sister slept in another bedroom. Earles slept in her bedroom with Bernard. He also recalled being awakened by the squeaking noise of his mother's bedroom door opening. After he saw the person walk from the bedroom to the kitchen, he went back to sleep.

A police investigator testified that when he questioned Bernard fifteen months after that night, Bernard said he and Earles got up during the night because he heard Earles' daughter "fussing." Bernard said he and Earles "went into the living room and [Earles' daughter] made an accusation that someone was messing with her." Bernard told the officer that Earles later said "someone was messing with [Earles' daughter's] vagina." Bernard denied that he touched Earles' daughter and told the officer that after Earles' daughter spoke with Earles, Earles' daughter told Bernard that Bernard's son touched her. According to Bernard, his son denied touching Earles' daughter and said Earles' son touched her.

-

After the trial judge denied Bernard's motion to strike the Commonwealth's evidence, Bernard's son testified that he was awakened the night of June 1 by Bernard, who told him that Earles' daughter had accused Bernard's son of "messing with her." He also testified that Earles made the accusation to him the next day. He testified that he heard no one accuse his father of touching Earles' daughter. Bernard presented no other witnesses.

At the conclusion of the evidence, the trial judge found that Earles' daughter was credible. He ruled that she had been molested and that the evidence proved Bernard was the perpetrator. Thus, the trial judge convicted Bernard of aggravated sexual battery in violation of Code § 18.2-67.3.

A month after the trial judge sentenced Bernard, Bernard filed a motion for a new trial. The motion alleged after-discovered evidence, including Bernard's son's admission, after Bernard's sentencing, that he had touched Earles' daughter. At a hearing on the motion, Bernard's son testified that he had always denied touching Earles' daughter prior to Bernard's conviction. He said that Bernard's lawyer asked him prior to the verdict whether he had touched Earles' daughter and that he denied having done so. He said, after Bernard's conviction and after Bernard had been released from jail on an appeal bond, he told Bernard that he had touched Earles' daughter. He further testified that while Earles' daughter was asleep he "touched the

-

corner of her vagina . . . [b]ecause her brother was doing it."

Bernard's son then testified as follows on redirect examination:

> Q:  When was . . . the first time you actually told your dad . . . that you had done this?
>
> A:  At the dumpster.
>
> Q:  When was that in time?  Was that before or after he had been in jail?
>
> A:  Before.
>
>   *      *      *      *      *      *      *
>
> [JUDGE]:  You just testified . . . that you told him the first time before he went to jail at the dumpster.
>
> A:  That was back when it first happened.
>
> [JUDGE]:  Okay, so you told him back when it first happened that you had done it?
>
> A:  Uh, huh.

Bernard testified that the son's testimony was inaccurate in one detail.  Bernard testified he talked with his son at the dumpster the morning after Earles' daughter made the accusation.  His son asked him not to tell other people "that he was accused, . . . not that he had done it.  He always said that he did not do it until recently."  Bernard testified that after he was released from jail, his son first admitted that he touched Earles' daughter.  He said before that occasion his son had denied touching her four or five times.

II.

The following well established principles govern motions for new trials:

> Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance. The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborate or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983) (citation omitted).

The trial judge ruled that the evidence did not prove the fourth factor and denied the motion. In so ruling the trial judge "[found] the evidence . . . not very credible." The trial judge was not satisfied that the evidence was not "collusive" and that it would produce the opposite result on retrial. In Odum, the Supreme Court noted that "while the evidence, if believed, was material, the trial [judge], assessing the credibility of defendant's witnesses both at trial and at the motion hearing, properly could find that it was not such as should produce opposite results on the merits at another trial."

-

225 Va. at 131, 301 S.E.2d at 149. We believe that principle is determinative in this case.

The evidence at trial proved that Bernard told the police he and Earles went to the living room during the night because Earles' daughter was "fussing." Neither Earles nor her daughter testified to that fact, however. Bernard also told the police that Earles' daughter accused his son of touching her. Earles' daughter and Earles specifically denied that Earles' daughter had accused Bernard's son of touching her. Bernard further told the police that he confronted his son about touching Earles' daughter, that his son denied touching Earles' daughter, and that his son said Earles' son had touched her. All this evidence had been placed in the record when Bernard's son testified at trial.

Bernard's son was not asked at trial whether he touched Earles' daughter, and he did not testify that he did. He also did not testify at trial that Earles' son touched her. Bernard's son testified at trial that Bernard woke him in the middle of the night and accused him of molesting Earles' daughter. That testimony was inconsistent with the testimony of Earles and Earles' daughter.

When Bernard's son testified at the hearing on the motion for a new trial, the trial judge had the opportunity to assess his credibility and to assess it within the context of his earlier trial testimony. Thus, the trial judge could consider

-

his demeanor and manner of testifying.  He could consider his failure to testify at trial that Earles' son touched the girl. In addition, he could consider how the testimony was inconsistent with the testimony of Earles and Earles' daughter. "More importantly, the trial [judge] was justified in concluding that [the same result would occur on retrial] because of the positive, credible, largely unimpeached identification of defendant" as the person in the room when Earles' daughter was touched.  Odum, 225 Va. at 131, 301 S.E.2d at 149.  Earles' daughter testified that she was awake when she was touched, that Bernard was in the room when she was touched, that the hands were large and rough, and that her brother and Bernard's son were asleep on the sofa and chair after she was touched and as Bernard walked away.

For these reasons, we hold that the trial judge did not abuse his discretion in refusing the motion for a new trial. Accordingly, we affirm the judgment.

Affirmed.
